**Opinion filed April 12, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00202-CV

_____

## IN THE INTEREST OF A.J.J.M., A CHILD

---

### On Appeal from the 32nd District Court

### Mitchell County, Texas

### Trial Court Cause No. 15,650

---

## MEMORANDUM OPINION

The trial court entered an order terminating the parental rights of A.J.J.M.'s mother and father. The mother (appellant) has filed a notice of appeal from the termination order. A.J.J.M.'s father, who voluntarily relinquished his rights, has not filed an appeal. We affirm.

*Issue*

Appellant presents a single issue for review. In that issue, she asserts that the evidence is legally and factually insufficient to support the finding that termination is in the best interest of A.J.J.M.

*Legal and Factual Sufficiency*

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2011). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most

favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. Section 161.001. In this case, the trial court found that appellant committed three of the acts listed in Section 161.001(1). The trial court found that appellant had engaged in conduct or knowingly placed A.J.J.M. with persons who engaged in conduct that endangered his physical or emotional well-being, that appellant had constructively abandoned A.J.J.M., and that appellant had failed to comply with the provisions of a court order stating the actions necessary for her to obtain the return of A.J.J.M. *See* Section 161.001(1)(E), (N), (O). Appellant does not challenge the findings made pursuant to Section 161.001(1). Any one of these unchallenged findings was sufficient to support termination as long as termination was shown to be in A.J.J.M.'s best interest. *See* Section 161.001. The trial court also found that termination was in A.J.J.M.'s best interest. *See* Section 161.001(2).

The question before us is whether the best interest finding is supported by legally and factually sufficient evidence. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one

or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

On January 20, 2010, appellant's children were removed from her care. Appellant subsequently voluntarily relinquished her rights to her two daughters in favor of relatives with whom the girls had been living. At the final hearing in this case, the Department of Family and Protective Services sought to terminate appellant's parental rights to her son, A.J.J.M. Appellant, her probation officer, and the Department caseworker testified at that hearing. The Department's caseworker was of the opinion that terminating appellant's parental rights would be in A.J.J.M.'s best interest.

The record shows that appellant was arrested for forgery on the day that the children were removed from her care and that, on the date of the final hearing in this case, appellant was incarcerated for violating her probation. A motion to revoke her probation was pending.

A.J.J.M. was and is medically fragile; he was born with a congenital heart defect, tricuspid atresia. He had surgery shortly after birth to place a shunt in his heart. Appellant was informed at that time that A.J.J.M. would need a second heart surgery. Appellant failed to obtain the needed second surgery. Upon removal, A.J.J.M. was "basically navy blue" and was immediately taken to the hospital, where it was discovered that his blood oxygenation level was dangerously low due to poor blood flow. His heart had grown over the shunt, and the blood flow through the shunt had decreased to "smaller than a piece of pencil lead." Open heart surgery was performed as soon as possible to remove the shunt and reroute arteries. Appellant admitted that A.J.J.M. was having extreme health issues at the time of his removal and that, if he had not been taken to the doctor, he could have died. There was evidence that the lack of oxygen subsequently caused A.J.J.M. to exhibit mild mental retardation. When he was removed, A.J.J.M. also suffered from an infected G-button feeding tube and bruising above his left eye. A.J.J.M. was filthy, and appellant's home was unsanitary and infested with roaches.

Appellant had no means of transportation and visited A.J.J.M. only twice in the sixteen months between removal and the final hearing. She also failed to comply with about half of the requirements set out in her family service plan. Appellant tested positive for cocaine while this case was pending, and she had used cocaine while pregnant. Appellant admitted that she had a drug problem, that her drug habit affected her ability to comply with the court-ordered service plan and to adequately parent her children, and that she had refused to seek drug treatment

despite the efforts of the Department. Appellant agreed at the final hearing that she still was not able to take care of A.J.J.M.; however, she stated that, if she were given additional time, she would seek drug treatment and would be able to take care of A.J.J.M. in the future.

The record shows that A.J.J.M. had been placed with foster parents who were attending to all of his medical and emotional needs, who thought that A.J.J.M. "hung the moon," and who wanted to adopt him. A.J.J.M. was progressing and doing well in his foster home. He had bonded with his foster family, and he became hysterical when his foster mother left during one of appellant's visits with A.J.J.M. Having a stable home with someone who can properly care for A.J.J.M., who ensures that A.J.J.M. receives necessary medical care, who has bonded with A.J.J.M., and who has demonstrated adequate parenting skills is in A.J.J.M.'s best interest.

Based upon the evidence in the record, we cannot hold that the best interest finding is not supported by clear and convincing evidence; the trial court could reasonably have formed a firm belief or conviction that appellant is unable to appropriately parent A.J.J.M. and that it would be in A.J.J.M.'s best interest for appellant's parental rights to be terminated. Thus, the evidence is both legally and factually sufficient to support the finding that termination of appellant's parental rights is in the best interest of A.J.J.M. Appellant's sole issue is overruled.

*This Court's Ruling*

We affirm the trial court's order terminating the parental rights of A.J.J.M.'s mother.

TERRY McCALL

JUSTICE

April 12, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

4